CASE NO. 24-13547

# In the United States Court of Appeals
# for the Eleventh Circuit

_____

AFRICAN PEOPLE'S EDUCATION AND DEFENSE FUND, INC.,

*Appellant,*

v.

PINELLAS COUNTY, a political subdivision of the State of Florida, by and through the PINELLAS COUNTY BOARD OF COUNTY COMMISSIONERS,

*Appellees.*

_____

ON APPEAL FROM THE OF UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
CASE NO. 23-CV-02395-TPB-AAS

_____

**APPELLEE, PINELLAS COUNTY'S ANSWER BRIEF**

**Laura K. Wendell**
**Daniel L. Abbott**
**Anne R. Flanigan**
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
2800 Ponce de Leon Blvd.
Suite 1200
Coral Gables, Florida 33134
(305) 854-0800

*Counsel for Appellee, Pinellas County*

Weiss Serota Helfman Cole & Bierman P.L.

*AFRICAN PEOPLE'S EDUCATION AND DEFENSE FUND, INC. V. PINELLAS COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA, BY AND THROUGH PINELLAS COUNTY BOARD OF COUNTY COMMISSIONERS.*
CASE NO. 24-13547

**CERTIFICATE OF INTERESTED PERSONS**

**AND**

**CORPORATE DISCLOSURE STATEMENT**

## A.        Interested Persons

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellee, Pinellas County respectfully submits this list of persons or entities that may have an interest in the outcome of this review:

1. Abbott, Daniel Lawrence, Esq. – Counsel for Appellee.

2. African Peoples Education and Defense Fund, Inc., A 501(c)(3) Florida Not for Profit Corporation – Appellant.

3. Eggers, Dave - Pinellas County Board of County Commissioners, Vice Chair.

4.  Flanigan, Anne Reilly, Esq. – Counsel for the Appellee.

5. Flowers, René - Pinellas County Board of County Commissioners Member.

6. Justice, Charlie – Former Pinellas County Board of County Commissioners Member.

7.Latvala, Chris - Pinellas County Board of County Commissioners Member.

8. Lirot, Luke, Esq. – Counsel for Appellant.

C-1

Weiss Serota Helfman Cole & Bierman P.L.

*AFRICAN PEOPLE'S EDUCATION AND DEFENSE FUND, INC. V. PINELLAS COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA, BY AND THROUGH PINELLAS COUNTY BOARD OF COUNTY COMMISSIONERS.*
CASE NO. 24-13547

9. Long, Janet – Former Pinellas County Board of County Commissioners Chair.

10. Peters, Kathleen - Pinellas County Board of County Commissioners

   Member.

11. Pinellas County Board of County Commissioners – Appellee.

12. Ricks, Rachel – Counsel for Appellant.

13. Scott, Brian – Pinellas County Board of County Commissioners, Chair

    Member.

14. Wendell, Laura K., Esq.  – Counsel for Appellee

**Corporate Disclosure Statement**

   Appellee, Pinellas County is a political subdivision of the State of Florida, which therefore has no parent company, subsidiary, or affiliate company that has issued shares to the public.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal challenges the district court's correct application of Fed. R. Civ. P.12(b)(6) to an amended complaint brought by appellant, African People's Education Defense Fund, Inc. ("APEDF") against Pinellas County ("County"). At issue were the County's discretionary decisions to revoke an initial, competitively awardable grant and to deny a second grant from funds made available to the County as Coronavirus State and Local Fiscal Recovery Funds ("SLFRF") authorized by the American Rescue Plan Act ("ARPA"), 15 U.S.C. §9058c, H.R. 1319, 117th Cong. (2021). The amended complaint did not sufficiently or plausibly allege claims for violation of the First Amendment right to expressive association, deprivation of a federal right to procedural due process, or racial discrimination against APEDF under the Equal Protection Clause. Oral argument is not necessary to assist the Court in its review of the limited record; however, because the Court may wish to reach issues of first impression (not, however, reached by the district court), the Court may benefit from oral argument.

## JURISDICTION

The County agrees that the district court has jurisdiction under 28 U.S.C. §1291 to review the district court's final order, entered on September 20, 2024, in

which it dismissed with prejudice APEDF's amended complaint. DE56-P.1-14. The

district court had jurisdiction pursuant to 28 U.S.C. §1331 and §1343.[1]

---

[1]    Contrary to APEDF's statement concerning jurisdiction, the amended complaint did not assert state law claims, rendering 28 U.S.C. §1367(a) inapplicable.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS.......................................................C-1

TABLE OF CONTENTS ...................................................................... i

TABLE OF CITATIONS....................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT................................................ i

JURISDICTION................................................................................ i

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF CASE AND FACTS..........................................................2

A.   Statement of the Case....................................................................2

B.   Statement of the Facts. ..................................................................2

SUMMARY OF ARGUMENT...................................................................5

STANDARD OF REVIEW ......................................................................8

ARGUMENT .....................................................................................9

I.    The District Court Correctly Ruled That APEDF Failed To State A
      Claim For Violation Of Freedom of Expressive Association.........................9

A.   The Court should conclude that any First Amendment rights that
      APEDF enjoyed were limited ones. ...............................................10

1.    APEDF does not dispute the applicability of *Nat'l
      Endowment.* ..........................................................................10

2.    The Court should conclude that First Amendment protections
      did not otherwise extend to APEDF. ............................................11

B.   The district court correctly concluded that APEDF did not
      allege a cause of action for First Amendment retaliation.........................15

II.     The District Court Correctly Ruled That APEDF Failed To State
        A Claim For Violation Of Procedural Due Process Under The
        Fourteenth Amendment. ...............................................................21

A.      The opportunity to participate in the discretionary grant
        program even if a contract had arguably been formed, did not
        give rise to a constitutionally protected property interest. ...........22

B.      APEDF did not establish a constitutionally inadequate process. ................27

III.    The District Court Correctly Ruled That APEDF Failed To State
        A Claim For Violation Of The Equal Protection Clause. .............28

A.      The Count III allegations. ..............................................................29

B.      The Court should affirm the district court's ruling that APEDF
        did not state an equal protection claim. ........................................31

1.      APEDF failed to sufficiently allege the racial identities of
        itself and other entities. ................................................................31

2.      Count III did not allege racial discrimination by the
        Commission. ...................................................................................36

3.      The amended complaint failed to sufficiently allege
        similarities of the comparators. ....................................................38

CONCLUSION ...................................................................................40

CERTIFICATE OF COMPLIANCE ..................................................41

CERTIFICATE OF SERVICE ............................................................41

SERVICE LIST ....................................................................................41

iv

# TABLE OF CITATIONS

**Page**

**Cases**

*A.A.A. Always Open Bail Bonds Inc. v. DeKalb Cty., Georgia,* No.
1:02-CV-2905-ODE, 2006 WL 5440395
(N.D. Fla. Aug. 4, 2006) ...............................................................12

*Amber Pyramid, Inc. v. Buffington Harbor Riverboats, L.L.C.,*
129 Fed Appx. 292 (7th Cir.2005) ................................................33

*Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 237 (1987) ...........................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................8

*ATL, Inc. v. U.S.*, 736 F. 2d 677 (Fed. Cir. 1984)......................................22

*Bains, LLC v. Arco Products, Ltd.,* 405 F.3d 764 (9th Cir.2005)...........................33

*Bank of Jackson County v. Cherry*, 980 F. 2d 1362 (11th Cir. 1993) .....................21

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ................................................. 22, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................8

*Bennett v. Hendrix,* 423 F. 3d 1247 (11th Cir. 2005) ....................................... 15, 18

*Board of County Comm'rs, Wabaunsee Cnty., Kansas v. Umbehr,*
518 U.S. 668 (1996)........................................................................11, 13, 14

*Boyd v. Warden, Holman Correctional Facility*, 856 F. 3d 853
(11th Cir. 2017).................................................................................8

*Burton v. City of Belle Glade*, 178 F. 3d 1175 (11th Cir. 1999).............................37

*Campbell v. Rainbow City, Ala*., 434 F. 3d 1206 (11th Cir. 2006) .................. 28, 39

*Contemporary Personnel, Inc. v. Godiva Chocolatier*, No. 09-00187,
2009 WL 2431461 (E.D. Pa. 2009) ...............................................33

*Ducey v. Yellen*, 615 F. Supp. 3d 1033 (D. Az. 2022).............................................26

Weiss Serota Helfman Cole & Bierman P.L.

*E & T Realty v. Strickland*, 830 F. 2d 1107 (11th Cir. 1987) ...................................37

*Emery Highway, LLC v. Bibb Cty., Georgia*, 377 F. Supp. 2d 1310
    (M.D. Ga. 2005)...........................................................................16

*Gateway Cable T.V., Inc. v. Vikoa Const. Corp.*, 253 So. 2d 461
    (Fla. Dist. Ct. App. 1971) ............................................................23

*Gonzalez v. Freeman*, 334 F. 2d 570 (D.C. Cir. 1964)...........................................22

*Horowitz v. Jasper County*, No. 9:23-cv-04700-RMG, 2024 WL
    3861326 (D.S.C. Aug. 16, 2024) .................................................26

*Indiana Land Co. v. City of Greenwood*, 378 F. 3d 705 (7th Cir. 2004)..................27

*Inner City Contracting, LLC v. Charter Township of Northville, Mich.*,
    87 F. 4th 743 (6th Cir. 2023) ......................................................33

*Jamerson v. Milwaukee County, Procurement Div.*, 2006 U.S. Dist.
    LEXIS 42245, at *30, 2006 WL 1589655
    (E.D. Wis. June 7, 2006) .............................................................33

*John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162
    (N.D.N.Y. 2001).........................................................................36

*Jones v. Ray*, 279 F. 3d 944 (11th Cir. 2001) ..........................................29

*Kaminski v. Coulter*, 865 F. 3d 339 (6th Cir. 2017)..................................27

*Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees*,
    775 F. App'x 496 (11th Cir. 2019)..............................................27

*Lewis v. City of Berkeley,* No. C-08-5089 JCS, 2009 WL 33326
    (N.D. Cal. Jan. 6, 2009) .............................................................37

*Los Alamitos Medical Center, Inc. v. Local Initiative Health Authority*,
    680 F. Supp. 3d 1169 (C.D. Cal.  2023) ............................... 23, 25

*Machete Products, LLC v. Page*, 809 F. 3d 281 (5th Cir. 2015)........... 16, 19, 20, 25

*Mangieri v. DCH Healthcare Authority*, 304 F. 3d 1072
    (11th Cir. 2002)....................................................................... 13, 14

Weiss Serota Helfman Cole & Bierman P.L.

*McClintock v. Eichelberger*, 169 F. 3d 812 (3d Cir. 1999) ........................11, 13, 14

*McDowell v. Jasper County*, No. 9:23-cv-04706-RMG, 2024 WL
    3861386 (D.S.C. Aug. 16, 2024) ..................................................................26

*McKinney v. Pate*, 20 F. 3d 1550 (11th Cir. 1994)..................................................27

*Medical Laundry Services, a Division of OPLCO, Inc. v. Bd. of
    Trustees of Univ. of Alabama*, 906 F. 2d 571 (11th Cir. 1990) .....................23

*Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, S.Ct. 2168
    L.Ed.2d 500 (1998) .............................................................................. passim

*Osheroff v. Humana Inc.*, 766 F. 3d 805 (11th Cir. 2015)........................................19

*Osman v. Hialeah Housing Authority*, 785 F. 2d 1550 1551
    (11th Cir. 1986)..............................................................................................23

*Pagan v. Calderon*, 448 F. 3d 16 (1st Cir. 2006) ...................................................29

*Prestige Restaurants & Entertainment, Inc. v. Bayside Seafood
    Restaurant, Inc.*, No. 09-23123-CIV, 2010 WL 680905
    (S.D. Fla. Feb. 23, 2010) ........................................................................ 33, 34

*Redondo-Borges v. U.S. Department of Housing & Urban
    Development*, 421 F. 3d 1 (1st Cir. 2005)................................................. 23, 24

*Rickett v. Jones,* 901 F. 2d 1058, 1060-61 (11th Cir. 1990).............................. 37, 38

*Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489 (D. Colo. 1988) ....................36

*Rust v. Sullivan*, 500 U.S. 173 (1991) ............................................................. 10, 13

*Sanders v. City of Los Angeles,* 250 F. 3d 668 (9th Cir. 2001) ...............................37

*Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.,* No. 1:17-CV-
    04400-WMR, 2023 WL 9107311(N.D. Ga. Nov. 15, 2023) ........................31

*Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.,* No. 21-13077,
    2023 WL 750710 (11th Cir. June 1, 2023) ..................................................31

Weiss Serota Helfman Cole & Bierman P.L.

*Smithback v. Texas,* No. 3:07-CV-0288-M ECF, 2007 WL 1518971
(N.D. Tex. May 24, 2007)..............................................................37

*Strickland v. Alderman,* 74 F. 3d 260 (11th Cir. 1996) ............................39

*Sutton v. U.S. Dept. of Housing & Urban Development*, 885 F. 2d 471
(8th Cir. 1989)..............................................................................22

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053
(9th Cir. 2004)..............................................................................31

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) ...........................25

*Transco Security, Inc. v. Freeman*, 639 F. 2d 318 (6th Cir. 1981) ............22

*Turner v. Westfield Washington Township*,  No. 22-1969, 2022 WL
17039087 (7th Cir. Nov. 17, 2022) ................................................25

*Ultimax Transp., Inc. v. British Airways, Inc*., 231 F. Supp. 2d 1329
(N.D. Ga. 2002) ...................................................................... 32, 36

*United States v. Aleksander Viktorovich Ionov, et al*., No. 8-22-CR-
WFJ-AEP (M.D. Fla. 2024).............................................................19

*Verma v. Jefferson Hospital Ass'n,* 2006 U.S. Dist. LEXIS 81926
2006 WL 3210456 (E.D.Ark. Oct. 6, 2006) ....................................33

*Village of Arlington Heights v. Metro. Housing Development Corp.,*
429 U.S. 252 (1977)........................................................... 31, 33, 34

*Vision Palm Springs, LLLP v. Michael Anthony Co*, 272 So. 3d 441
(Fla. Dist. Ct. App. 2019) ..............................................................23

*Walker v. Fla*., No. 1:22: CV00233-RH-ZCB, 2023 WL 3306566
(N.D. Fla. Apr. 3, 2023) ................................................................29

**Rules**

Fed. R. Civ. P.12(b)(6) ................................................................... i

Fed. R. App. P. 28...........................................................................2

Weiss Serota Helfman Cole & Bierman P.L.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that APEDF failed to state a claim in Count I of the amended complaint for violation of expressive association under the First Amendment, where the award of grant monies was discretionary and APDEF other alleged no previous, ongoing contractual relationship with the County.[2]

2.    Whether the district court correctly held that APEDF failed to state a claim in Count II of the amended complaint for violation of a federal right to procedural due process, where APEDF failed to allege a constitutionally protected property right in discretionary, competitive grant funding and otherwise had an adequate state court remedy for breach of contract.

3.    Whether the district court correctly held that APEDF failed to state a claim in Count III of the amended complaint for violation of equal protection, where APEDF failed to allege sufficient facts to impute race to itself or to the comparators it identified, and otherwise failed to allege facts supporting race-based discrimination or to allege sufficiently that similarly situated groups outside of the protected class received more favorable treatment.

---

[2]    As argued below at p. 9, n. 5, APEDF's statement of the first issue (OB:5) neither accurately reflects the claim that APEDF alleged and asserted as Count I, nor the district court's holding regarding Count I.

1

Weiss Serota Helfman Cole & Bierman P.L.

## STATEMENT OF CASE AND FACTS

**A.    Statement of the Case.**

As relates to APEDF's statement regarding "procedural history," OB:17-18, the County agrees that the district court issued a final order granting in part and denying in part the County's motion to dismiss the original complaint.  DE33; *see also* DE1; DE16.  The County disagrees that the original complaint alleged that the County violated APEDF's right to expressive association based on its "association with the Uhuru Movement," as stated at OB:17, because in the original complaint, APEDF alleged that it was not associated with the Uhuru Movement. DE1-P.35(¶48(a)).  It was not until APEDF filed its amended complaint that it alleged: "APEDF is indeed part of this broad pro-Black tendency [the Uhuru Movement] and claims its right to association." DE35-P.16(¶51(a)), as the district court noted in its order granting the County's motion to dismiss the amended complaint.  DE56-P.4.

**B.    Statement of the Facts.**

The County objects to APEDF's "Introduction," at OB:1-5, as unauthorized under Fed. R. App. P. 28 and 11th Cir. R. 28-1. Although purporting to recite facts, strays outside of the allegations of the amended complaint and is replete with argument not tied to the record.

Weiss Serota Helfman Cole & Bierman P.L.

Nevertheless, as stated at OB:3, and alleged in the amended complaint, the APRA provided SLFRF funds to the County which dedicated a portion of the funds to a Nonprofit Capital Project Fund to fund nonprofit capital purchases to mitigate economic harm caused by the COVID-19 pandemic; the Department of Treasury furnished the County with SLFRF monies, and the County contracted with Pinellas Community Foundation ("PCF") to review applications and to make recommendations to the County Commission, which would decide which grant applications to approve, award and fund.  DE35-P.6-7 (¶¶19-22).

Contrary to APEDF's statement, at OB:4, although APEDF is a non-profit entity, it was not alleged to be "a separate and distinct entity from the 'Uhuru Movement.'"  The amended complaint alleged that the Uhuru Movement is not an entity at all. DE35-P.16(¶51(a) ("The Uhuru Movement is not a distinct or formal entity, but a broad characterization of like-minded groups and individuals promoting Black community empowerment...").

APEDF's statement of "facts within the amended complaint and exhibits" at OB:6-16 also suffers from the inclusion of argument, rhetorical flourish and conjectural characterizations.   As concerns allegations material to the issues before

3

Weiss Serota Helfman Cole & Bierman P.L.

the Court, APEDF's statement of the factual allegations in the complaint is principally accurate (less conclusory and argumentative glosses on the allegations).[3]

However, the County objects to APEDF's footnote 2 concerning the County's motion to compel better answers to defendant's request for admissions. DE40. Not only did the County withdraw the motion, rendering it irrelevant to the order dismissing the amended complaint; the County's motion to dismiss the amended complaint and the district court order granting it assumed *arguendo* that the allegations of amended complaint in which APEDF distanced itself from antisemitic violence and rhetoric (DE35-P.15-17 (¶51(a)-(d)) were true.[4]

---

[3]    APEDF embellishes what certain exhibits reveal, particularly as relate to the APEDF's second grant application. For example, contrary to APEDF's statements at OB:1-2 concerning the County's treatment of the two applications and their rankings by the PCF, the PCF questioned the second grant application for a generator because it would not be used exclusively by APEDF. DE35-17. The County also notes that PCF gave APEDF's application for the generator an average score of 85%, DE35-13 (characterized at OB:12 as a "profoundly positive review"). And APEDF's screen shot, DE35-15, is incomplete and does not support APEDF's statement that other grant applicants were approved that would share equipment funded by an SLFRF grant with other entities (as characterized at OB:13).

[4]    *See* DE36-P.13 & n. 8 (County's motion to dismiss the amended complaint, accepting as true the allegations that County's beliefs were mistaken); DE56-P. 2 ("In the instant lawsuit, Plaintiff claims Defendant's decisions not to award the ARPA grant funds to Plaintiff were the result of a discriminatory belief that Plaintiff is associated with the Uhuru Movement, a black nationalist and allegedly antisemitic political organization under investigation by the Federal Bureau of Investigation.")

Weiss Serota Helfman Cole & Bierman P.L.

## SUMMARY OF ARGUMENT

The County Commission was vested with broad discretion as to whether or not to award competitive grant monies to non-profit applicants for COVID-19 SLFRF funds.  APEDF's claims below, and its argument here, contrive to suppress this salient point.  Yet the discretionary nature of SLFRF awards has ramifications as to the applicable standards governing APEDF's constitutional claims, and APEDF did not, in this regard or otherwise, sufficiently allege the elements of its claims so as to state any plausible constitutional claim.

As the district court correctly concluded, Count I for violation of APEDF's freedom of expressive association did not state a claim for relief.  As an applicant for competitive discretionary awards of grant monies, APEDF's First Amendment rights were narrow, since the government may allocate funding according to criteria that would be impermissible were direct regulation of speech at stake, as long as its denial of discretionary funds did not effectively prohibit the applicant from otherwise engaging in expressive association. Ignoring the discretionary nature of SLFRF funding, APEDF urges the Court to conclude that it enjoyed broad First Amendment rights by reason of putative contract formation and breach by the County with respect to its revocation of the initial decision to award a grant on APEDF's first application.  But, to the extent that the Court reaches that issue of first

Weiss Serota Helfman Cole & Bierman P.L.

impression here, though the district court did not, the Court should conclude that First Amendment rights do not extend at all to those claiming such rights by reason of an application for a government contract, where, as here, they lack an ongoing, preexisting contractual relationship with the government. And, turning to Count I itself, the Court should conclude that to the extent that APEDF enjoyed First Amendment protections in connection with its requests for discretionary grant monies, APEDF failed to plausibly allege a claim for retaliation for a vague expressive association with a "pro-Black tendency," the loosely described Uhuru Movement.

The Court should also conclude that Count II for deprivation of a federal right to procedural due process failed to state a claim. As the district court correctly held, APEDF failed to allege a constitutionally protected property interest within the meaning of controlling authority. Duly noting that APEDF attempted to claim such property interest of constitutional dimensions as to the first grant application (by reason of the County's initial approval of it and APEDF's execution of a draft contract (not, however, signed by the County)), the district court correctly grounded its decision in abundant authority holding that simple breaches of contract do not amount to a constitutional deprivation of property. APEDF shows no error in the district court's reasoning. In light of the discretionary nature of the SLFRF program,

Weiss Serota Helfman Cole & Bierman P.L.

APEDF could claim no independent source of law securing an entitlement to an award. And absent such a legitimate claim of entitlement, APEDF had no constitutionally protected property right. Nor does APEDF show error in the district court's ready conclusion that APEDF could not allege deprivation of a federal right to procedural due process because it had a state court remedy for its putative breach of contract claim in state court.

Lastly, the district court did not err in dismissing Count III because the allegations in the amended complaint were, again, insufficient to plausibly state a claim, this time, for violation of APEDF's constitutional right to equal protection on grounds of racial discrimination. The Court has not yet decided whether or not a corporation can have a race, or that officials can discriminate against a corporation because of a corporation's race, under the Equal Protection Clause. Yet, giving APEDF the benefit of the doubt, the district court concluded that APEDF had not sufficiently alleged grounds upon which the race of either APEDF or the comparator entities could be imputed to them. Nor did the allegations show that the County had intentionally discriminated against APEDF on the basis of race, as required to state a claim. As alleged, the County was motivated by mistaken beliefs concerning factors other than race -- criminal activity that the County had imputed to APEDF. And, finally, the amended complaint did not sufficiently allege that the comparators

Weiss Serota Helfman Cole & Bierman P.L.

identified by APEDF as receiving more favorable treatment were "similarly situated."

## STANDARD OF REVIEW

The Court reviews the district court's grant of a motion to dismiss with prejudice on a de novo basis, accepting the factual allegations in the complaint as true and construing them in a light most favorable to the plaintiff. *Boyd v. Warden, Holman Correctional Facility*, 856 F. 3d 853, 863-64 (11th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is]... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Weiss Serota Helfman Cole & Bierman P.L.

**ARGUMENT**

I.    **The District Court Correctly Ruled That APEDF Failed To State A Claim For Violation Of Freedom of Expressive Association.**

In Count I of the amended complaint, APEDF claimed that the County violated its right of freedom of expressive association with the Uhuru Movement, which (as alleged) is not a distinct entity, but a "broad Pro-Black tendency," and "broad characterization of like-minded groups and individuals supporting Black community empowerment." DE35-P.51(a). The Court should affirm the district court's determination that APEDF failed to state a claim.[5]

---

[5]    The first issue presented on appeal concerning APEDF's own allegations and the challenged final order is not, as APEDF presents it: "Whether the district court erred in holding that Pinellas County can deny a government benefit that the APEDF fully qualified for based on an actual or perceived association with a group holding controversial viewpoints involving African Americans." OB:5 (Issue 1). The district court made no such pronouncement. Furthermore, as alleged, the County did not deny grant monies to APEDF because it was associated with a group holding controversial viewpoints "involving African Americans," but because the County attributed to APEDF criminal activity. DE35-P.15-17(¶51(a)-(d)). The amended complaint makes mention of topics of "Black empowerment, such as the 'Black Power Movement' or the 'Civil Rights Movement,'" but does so in the context of allegations describing the breadth of the Uhuru Movement. DE35-P.51(a). To the extent that the amended complaint is construed to allege that APEDF's "public affairs programming" includes speech on those topics of "Black empowerment," Count I did not claim that the County deemed that speech objectionable or that it served as grounds to deny the grant monies.

Weiss Serota Helfman Cole & Bierman P.L.

**A.    The Court should conclude that any First Amendment rights that APEDF enjoyed were limited ones.**

**1.    APEDF does not dispute the applicability of *Nat'l Endowment.***

The district court considered, first, the parameters of First Amendment protection an applicant for a discretionary grant of government monies enjoys, as decided by the United States Supreme Court in *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569 (1998). DE56-P.5-6.[6] APEDF does not dispute the district court's view, nor the applicability of *Nat'l Endowment.*

In this regard, as the district court correctly noted:

> The government can, without violating the Constitution, "'selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way.'" "In doing so, 'the [g]overnment has not discriminated... it has merely chosen to fund one activity to the exclusion of the other.'"

DE56-P.5 (quoting *Nat'l Endowment,* 524 U.S. at 587-88 (1998) (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). And, recognizing that the First Amendment may only in certain circumstances apply in the context of discretionary government grant funding, the district court further observed that "the government may allocate competitive funding according to criteria that would be impermissible were direct

---

[6]    On the discretionary nature of the award of competitive grant awards under the SLFRL in particular, *see* below, pp. 25-26.

10

regulation of speech or a criminal penalty at stake." DE56-P.5 (quoting *Nat'l Endowment*, at 587-88). While First Amendment protections extend in this context, they are limited. Citing to *Nat'l Endowment*, at 587, the district court correctly explained: "The denial of discretionary grants may become unconstitutional only if the government effectively prohibit[s] a recipient from engaging in otherwise protected conduct outside of the scope of the governmental funded program, or if the subsidy is manipulated to have a coercive effect." DE56-P.5 (citing *Nat'l Endowment*, at 587) (quoting in part *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 237 (1987) (Scalia, J., dissenting).

> **2.    The Court should conclude that First Amendment protections did not otherwise extend to APEDF.**

The district court next considered, but did not decide a point of law on which the Supreme Court reserved ruling in *Board of County Comm'rs, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668 (1996): whether First Amendment protections extend to bidders or applicants for government contracts, who do not have an ongoing, preexisting contractual relationship with the government. DE5-P.6. APEDF devotes its argument at I.A. to challenging the district court's consideration of *Umbehr* and the Third Circuit's decision in *McClintock v. Eichelberger*, 169 F. 3d 812 (3d Cir. 1999). OB:21-26.

Weiss Serota Helfman Cole & Bierman P.L.

In this regard, the district court correctly noted that the Supreme Court has not extended First Amendment protections to bidders or applicants for government contracts. DE56-P.6. In *Umbehr*, 518 U.S. at 685, the Supreme Court held that independent contractors who have a standing contractual relationship with the government are protected by the First Amendment from termination of the relationship for political reasons, cautioning: "we emphasize the limited nature of our decision today. Because Umbehr's suit concerns the government's termination of a preexisting commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." *Id*. at 686 (emphasis added).

As the district court noted, a few circuit courts have weighed in, but they have "differed over the First Amendment protection that should be granted to those who allege retaliation in the form of a rejected application for a public benefit, such as government contracts." DE56-P.6 (citing *A.A.A. Always Open Bail Bonds Inc. v. DeKalb Cty., Georgia,* No. 1:02-CV-2905-ODE, 2006 WL 5440395 (N.D. Fla. Aug. 4, 2006). The district court below found no *direct* Eleventh Circuit authority deciding whether the First Amendment affords protection to those who are merely applying for government contracts. As a result, the district court *refrained* from deciding that no First Amendment protections extended to APEDF. DE56-P.6.

Weiss Serota Helfman Cole & Bierman P.L.

Nevertheless, APEDF asks the Court to take up the issue. To the extent that the Court does so, it should conclude that First Amendment protections extend only to those who have had an ongoing, preexisting contractual relationship with the government. Contrary to APEDF's contention, the Third Circuit's decision in *McClintock v. Eichelberger*, 169 F. 3d 812 (3d Cir. 1999) was well-reasoned. There, the Third Circuit held that applicants for a government contract (whose bid was rejected because of their support of certain political candidates) did not have a sufficiently ongoing relationship with the government to support a claim for First Amendment retaliation; the applicants (who were not, as here, strangers to government contracts) had in the past merely secured two prior, discrete government contracts. *Id.* at 816.

In holding that no First Amendment protections extended to those applicants, *McClintock* emphasized the "limited nature" of the Supreme Court's decision in *Umbehr* – it extended First Amendment protection only to those with pre-existing, ongoing contractual relationships with the government. As the Third Circuit noted, in reserving ruling on the question, the Supreme Court had in fact "carefully cabined its decision." 169 F. 3d at 817.

Although, as the district court correctly noted, the Court has not directly weighed in on the question, DE56-P.6, the Court has touched upon it. In *Mangieri*

13

Weiss Serota Helfman Cole & Bierman P.L.

*v. DCH Healthcare Authority*, 304 F. 3d 1072, 1076 (11th Cir. 2002), the Court held that the First Amendment afforded protection to a physician who had been under contract for three years to provide anesthesiology services for a state hospital, but whose contract was not renewed in alleged retaliation for the physician's speech on matters concerning the hospital. The Court recognized and did not criticize the *McClintock* case. Rather, it concluded that, unlike the contractor in *McClintock*, the physician did indeed have a pre-existing, ongoing contractual relationship: the happenstance that the three-year contract did not contain a renewal provision did not change that salient fact. *Id.*

To the extent that the Court directly reaches the question on which *Umbehr* reserved ruling, it should conclude that First Amendment protections do not extend to unsuccessful applicants for government contracts. Such a conclusion is consistent with *Umbehr* and with the Court's treatment of *McClintock* in its *Mangieri* decision. In in doing so, the Court should reject APEDF's contention that it was entitled to First Amendment protections arising from a putative contractual relationship with the County stemming from its first grant application for radio equipment. OB:24-25. In that regard, APEDF at most contended that the County had formed a contract with APEDF to fund the first grant, which the County immediately breached by non-

14

performance. The County disagrees: there was neither contract nor breach.[7] But regardless, this putative contract with APEDF arising from its first grant application did not demonstrate a pre-existing, ongoing contractual relationship that might serve to vest broad First Amendment protections in APEDF.

### B.    The district court correctly concluded that APEDF did not allege a cause of action for First Amendment retaliation.

The district court correctly concluded that APEDF did not allege a cause of action for First Amendment retaliation: "Assuming *arguendo,* that Plaintiff could assert some sort of First Amendment retaliation claim based on the revocation of the discretionary government contract without an ongoing relationship with the government, it still fails to state a plausible claim for relief." DE56-P.7 APEDF shows no error in the district court's conclusion.[8]

The district court cited to the three elements needed to state a retaliation claim set forth in *Bennett v. Hendrix,* 423 F. 3d 1247, 1250 (11th Cir. 2005). DE56-P. 7 ("Generally, a plaintiff bringing a retaliation claim predicated on First Amendment

---

[7]    On the putative contract claim, *see infra,* n.11.

[8]    Although arguing, incorrectly, that APEDF had a contract with the County to fund a grant award for radio equipment, APEDF does not now (and cannot) dispute that the County had discretion to grant or deny awards of SLFRF funds; and APEDF has not challenged the district court's correct reliance on *Nat'l Endowment. See infra*, n.11, pp. 1920;35-26.

Weiss Serota Helfman Cole & Bierman P.L.

must establish that: (1) the plaintiff engaged in constitutionally protected activity; (2) the defendant took an adverse action that would chill a person of ordinary firmness from exercising his or her rights; and (3) a causal connection between the retaliatory action and the adverse effect on First Amendment activity.") The district court also observed: "A majority of circuit courts of appeals further require a plaintiff alleging retaliation to show that his expression was curtailed in some way by the adverse action taken." DE56-P.7 (citing 2025 *Emery Highway, LLC v. Bibb Cty., Georgia*, 377 F. Supp. 2d 1310, 1252-53 (M.D. Ga. 2005). And the district court further cited to *Machete Products, LLC v. Page*, 809 F. 3d 281, 290 (5th Cir. 2015), DE56-P.8, where that court affirmed dismissal of a §1983 claim brought by a film company complaining of the denial of a discretionary grant, stating:

> A government funding provision will not compromise First Amendment values as long as it "[does] not silence speakers by expressly threaten[ing] censorship of ideas," or "introduce considerations that, in practice, would effectively preclude or punish the expression of particular views." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 572, 583, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (upholding a federal grant program requiring the responsible agency to fund artistic pieces only after "taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public"). "[A]lthough the First Amendment certainly has application in the subsidy context ... the [g]overnment may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty stake." *Id.* at 587–88, 118 S.Ct. 2168. Government funding provisions can become unconstitutional conditions if they "effectively prohibit[ ] the recipient from engaging in the protected conduct outside the scope of the

Weiss Serota Helfman Cole & Bierman P.L.

[government] funded program," *Rust,* 500 U.S. at 197, 111 S.Ct. 1759, or if the subsidy is "manipulated to have a coercive effect," *Finley,* 524 U.S. at 587, 118 S.Ct. 2168 (citation omitted).

APEDF does not now show that the district court erred in its conclusion that the amended complaint failed to adequately allege that the County violated its First Amendment right of association by denying APEDF a competitive award of discretionary grant monies.[9]

The Count I claim asserted by APEDF was difficult to parse. In the original complaint, APEDF asserted that it was not part of or directly associated with the Uhuru Movement, and that the County revoked and denied its applications for grant money because of its mistaken belief that APEDF was the Uhuru Movement or was associated with it.  DE1-P.35(¶48(a)). In the amended complaint, APEDF alleged

---

[9]     The district court held: "Plaintiff appears to allege that Defendant violated its First Amendment rights by revoking or denying federal grant money because of its perception of Plaintiff's association with the Uhuru Movement based on 'the apparent content of [Plaintiff's] website" and location.  However, Plaintiff fails to adequately allege that it is engaged in constitutionally protected activity (and the nature of that activity), that Defendant's actions were motivated or caused by exercise of that right, and, significantly, that Defendant's conduct in revoking or denying discretionary federal grant money was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. In additional, Plaintiff has not sufficiently pled or shown that the denial or revocation of the grant money effectively precluded or punished Plaintiff from engaging in protected First Amendment activity – Plaintiff is free to engage in protected expressive association (including with the Uhuru Movement) without the benefit of grant funding, and in fact it does so." DE56-P.7.

Weiss Serota Helfman Cole & Bierman P.L.

something different: the Uhuru Movement "is not a distinct or formal entity, but a broad characterization of like-minded groups and individuals promoting Black community empowerment, such as the 'Black Power Movement' or the 'Civil Rights Movement,'" and APEDF "is indeed part of this pro-Black tendency and claims its right to association with the Uhuru Movement." DE35-P.51(a). Yet APEDF distanced itself and disavowed any "expressive association" with those members of the Uhuru Movement who were accused of the criminal promulgation of antisemitic hate speech and the dissemination of Russian propaganda, which views APEDF alleged it did not share or promulgate. DE35-P.15-17(¶51(a)-(d)).

As the district court correctly held, the thread of these vague allegations did not suffice to state a plausible retaliation claim. DE56-P.7. APEDF did not allege a constitutionally protected expressive association, but rather a non-descript identification with a "pro-Black tendency." *Hendrix,* 423 F. 3d at 1250.  It did not allege that the County denied it grant funding because APEDF cares about or supports "pro-Black" ideas generally. *Id*.  Nor did APEDF allege that the denial or revocation of grant monies would chill a person of ordinary firmness from continuing to care about "pro-Black" ideologies, much less that the County's denial or revocation of grant monies had caused APEDF to curtail its support for the Black community. *Id*. Furthermore, APEDF did not allege that the denial or revocation of

18

Weiss Serota Helfman Cole & Bierman P.L.

the competitively awardable grant monies effectively precluded Plaintiff from engaging in protected First Amendment activity. *Machete Products,* 809 F. 3d at 290 (citing *Nat'l Endowment,* 524 U.S. at 572). As the district court observed: "Plaintiff is free to engage in protected expressive association (including with the Uhuru Movement) without the benefit of grant funding, and in fact it does so." DE56-P.8.

APEDF does not demonstrate error. OB:26-31(I.B). APEDF cites to cases describing the importance of the First Amendment right to expressive association, and otherwise contends that its allegations sufficed, failing to grapple with the conclusory (and contradictory) nature of its allegations regarding its vague association with the Uhuru Movement. The amended complaint did not allege that the County's denial of funding arose from APEDF's "pro-Black tendency." It instead alleged that the denial arose instead from the County's mistaken belief regarding the nature of the Uhuru Movement and APEDF's affiliation with members holding violent, antisemitic beliefs.[10] Furthermore, APEDF overlooks entirely the

---

[10]    The district court did not err, as APEDF contends at OB:31-32 (I.C.) in taking judicial notice of the conviction of certain individuals in the case-styled *United States v. Aleksander Viktorovich Ionov, et al*., No. 8-22-CR-WFJ-AEP (M.D. Fla. 2024). *See* DE56-P.2, n. 1. "In ruling on a motion to dismiss, the court may consider matters capable of judicial notice." *U.S. ex. rel. Osheroff v. Humana Inc*., 766 F. 3d 805, 811 (11th Cir. 2015). The district court did not begin to conclude that APEDF was in any way involved in the indictment and conviction of members of the African People's Socialist Party and the Uhuru Movement. Rather, the district court cited to the criminal case because it had bearing on APEDF's allegations concerning the County's misperception of APEDF's connections to such individuals and APEDF's

19

Weiss Serota Helfman Cole & Bierman P.L.

applicability of *Nat'l Endowment*, when it contends incorrectly that it need not have alleged that it was chilled or precluded from associative expression by reason of the County's denial of discretionary grant monies. *Machete Products,* 809 F. 3d at 290 ("A government funding provision will not compromise First Amendment values as long as it '[does] not silence speakers by expressly threaten[ing] censorship of ideas,' or 'introduce considerations that, in practice, would effectively preclude or punish the expression of particular views.'") (quoting *Nat'l Endowment,* 524 U.S. at 572).

Accordingly, the Court should reject APEDF's bid to extend First Amendment protections beyond those established in the context of discretionary awards of competitive grant monies in *Nat'l Endowment.* To the extent that APEDF enjoyed First Amendment protections in connection with its request for grant monies, it should conclude that APEDF failed to plausibly allege a claim for retaliation for a vague expressive association with the "pro-Black tendency," it loosely described as the Uhuru Movement.

---

allegations in that regard. In fact, the footnote in question follows the district court's gloss on APEDF's claim. DE56-P.2 ("In the instant lawsuit, Plaintiff claims Defendant's decisions not to award the ARPA grant funds to Plaintiff were the result of a discriminatory belief that Plaintiff is associated with the Uhuru Movement, a black nationalist and allegedly antisemitic political organization under investigation by the Federal Bureau of Investigation.")

Weiss Serota Helfman Cole & Bierman P.L.

## II.    The District Court Correctly Ruled That APEDF Failed To State A Claim For Violation Of Procedural Due Process Under The Fourteenth Amendment.

In Count II of the amended complaint, APEDF claimed that the County deprived it of procedural due process under the Fourteenth Amendment because, after initially approving its first grant application, the County Commission revoked the approval without affording APEDF notice and an opportunity to be heard.  DE35-P.20(¶¶61-66).  APEDF alleged that "the Commission's approval of the Grant and the 'offer' of the contract related thereto was accepted by APEDF," such that there "was a contract, and the APEDF had [a] 'property right' in the benefits provided under this contract." DE35-P.22(¶73).

APEDF agrees that the district court correctly framed the elements of its Count II claim.  To have stated a claim for deprivation of a federal right to procedural due process, APEDF was required to allege a "(1) constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation."  DE35-P.8 (quoting *Bank of Jackson County v. Cherry*, 980 F. 2d 1362, 1366 (11th Cir. 1993). *See*  OB:33-34.  Contrary to APEDF's arguments to the Court, OB:33-37(II.A & B.), the district court correctly ruled that APEDF did not state a claim under the first and third prongs.

Weiss Serota Helfman Cole & Bierman P.L.

### A.    The opportunity to participate in the discretionary grant program even if a contract had arguably been formed, did not give rise to a constitutionally protected property interest.

APEDF failed to allege a constitutionally protected property interest within the meaning of controlling authority. The Court's decision in *Bank of Jackson County* (cited by the district court) is instructive.  There, the Court held that a bank's participation in a government loan guarantee program was not a "property interest" protected from exclusion from the program without procedural due process.  980 F. 2d at 1366.  As the Court explained: "<u>A property interest must rest upon 'a legitimate claim of entitlement</u>." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (emphasis added). "Courts have consistently held that 'no citizen has a 'right' ... to do business with the government." *Id*. (quoting *Gonzalez v. Freeman*, 334 F. 2d 570, 574 (D.C. Cir. 1964) and citing *Sutton v. U.S. Dept. of Housing & Urban Development*, 885 F. 2d 471, 474 (8th Cir. 1989) (individual had no constitutionally protected property interest in membership on panel of government approved property appraisers); *ATL, Inc. v. U.S.*, 736 F. 2d 677, 683 (Fed. Cir. 1984) (suspended contractor has no property interest in government contracts); *Transco Security, Inc. v. Freeman*, 639 F. 2d 318, 321 (6th Cir. 1981) (business suspended from right to bid on government contracts had no protected property interest)).

Weiss Serota Helfman Cole & Bierman P.L.

Duly noting that APEDF attempted to claim a constitutionally protected property interest in the first grant application by reason of the County's initial approval of it and APEDF's execution of a draft contract (not, however, signed by the County), the district court correctly cited to additional authority: "[C]ourts have held with regularity that 'a simple breach of contract does not amount to an unconstitutional deprivation of property.'" DE56-P.9 (quoting *Redondo-Borges v. U.S. Department of Housing & Urban Development*, 421 F. 3d 1, 10 (1st Cir. 2005) and citing *Medical Laundry Services, a Division of OPLCO, Inc. v. Bd. of Trustees of Univ. of Alabama*, 906 F. 2d 571, 573 (11th Cir. 1990) and *Osman v. Hialeah Housing Authority*, 785 F. 2d 1550 1551 (11th Cir. 1986)).[11]

---

[11]    It bears emphasis that, even if the existence of a contract alone were thought sufficient to demonstrate a constitutionally protected property interest, contrary to the case law cited by the district court, APEDF's amended complaint did not, as a matter of law, demonstrate that an enforceable contract had been formed. In response to the City's motion to dismiss the amended complaint, APEDF relied on the common law concept that a contract need not be signed by both parties in order to form an enforceable contract. DE39-P.9 (citing, *inter alia*, *Gateway Cable T.V., Inc. v. Vikoa Const. Corp.*, 253 So. 2d 461, 463 (Fla. Dist. Ct. App. 1971) ("A contract may be binding on a party despite the absences of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties."). APEDF ignored that the form of unexecuted contract provided that the agreement would commence only upon its execution. DE35-5-P.6 ("This Agreement shall commence upon execution...."). Under Florida law, an agreement is not final where it reflects on its face the intention that it be executed before becoming effective. *Vision Palm Springs, LLLP v. Michael Anthony Co*, 272 So. 3d 441, 447-48 (Fla. Dist. Ct. App. 2019) (where contract provided for an effective date upon execution by the last signatory, "the parties clearly intended for the agreement to become effective only

23

Weiss Serota Helfman Cole & Bierman P.L.

ADEPF now argues that its Count II claim is not one for a "simple 'breach of contract,'" but it does not show error in the district court's holding. OB:35. "To establish a constitutionally protected property interest, a plaintiff "must have more than an abstract need or desire for [a thing]... [and] more than a unilateral expectation of it." "A plaintiff must instead 'have a legitimate claim of entitlement to it." *Redondo-Borges*, 421 F. 3d at 8 (citing *Roth*, 408 U.S. at 577) (emphasis added). And to have a legitimate claim of entitlement to it, a plaintiff must point to an "'independent source' of law" securing its right to participate in the government program, that is to say, "an entitlement." *Bank of Jackson*, 980 F. 2d at 1366 (citing *Roth*, 408 at 577) (emphasis added).

APEDF now argues that it is like "the welfare recipients in *Goldberg v. Kelly*, who had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." OB:35 (citing *Roth*, 408 U.S. at 577). In that regard, APEDF contends merely that its eligibility for grant money was "confirmed" by reason of the alleged facts concerning the PCF's recommendation and ranking. OB:35. But pointing merely to the recommendation and ranking by PCF, APEDF

---

upon execution by the last signatory." "Without signatures, there is no effective date. Without an effective date, there is no obligation to pay."). *See also* DE36-P.7-9 (cases cited by the County in its motion to dismiss the amended complaint).

Weiss Serota Helfman Cole & Bierman P.L.

points to no "'independent source' of law" upon which a "legitimate claim of entitlement" might be based. *Bank of Jackson*, 980 F. 2d at 1366 (citing *Roth*, 408 at 577). APEDF does not now (nor did it below[12]) point to any such statute, law, or rule establishing entitlement to an award by the County of SLFRF funds.

Nor can it. "[D]iscretionary statutes do not give rise to constitutionally protected interests." *Machete Productions* 809 F. 3d at 290 (citation omitted) (entity denied funding under discretionary grant program had no constitutionally protected property right to grant).[13] "Nothing in any of the [COVID-19 relief acts] secures the right to benefits for individual applicants." *Turner v. Westfield Washington Township*, No. 22-1969, 2022 WL 17039087 (7th Cir. Nov. 17, 2022) (referencing the ARPA, among other COVID-19 relief acts). And APEDF could claim no entitlement to an

---

[12]    Count II was instead predicated on the theory that the County's revocation of its initial decision to award APEDF discretionary grant money amounted to a breach of contract. *See* DE35-P.22 (¶73) (quoted above). APEDF did not allege any "'independent source' of law" upon which a "legitimate claim of entitlement" could be based. At most, the amended complaint identified PCF's own website, DE 35-P. 13-14 (¶¶46) (citing DE35-15). There, PCF set forth "eligibility criteria" for applications, not awards: "<u>This grant opportunity is open to organizations</u> that are ...." DE35-15 (emphasis added).

[13]    *See also, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) ("A benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Los Alamitos Medical Center, Inc. v. Local Initiative Health Authority*, 680 F. Supp. 3d 1169, 1175 (C.D. Cal. 2023) ("whether the benefit vests the applicant with 'a claim of entitlement' or merely a 'unilateral expectation' is determined by the discretion that the agency retains.")

Weiss Serota Helfman Cole & Bierman P.L.

award of SLFRF funds because, within the eligible use of providing economic relief assistance to non-profits, the County had "wide latitude" to awards funds. *See Coronavirus State and Local Fiscal Recovery Funds*, 31 C.F.R. §35, at 4379 (Jan. 27, 2022) ("Recipients [a government that receives SLFRF funds] generally have wide latitude to award funds to many types of organizations, including nonprofit or for-profit organizations."); *see also Ducey v. Yellen*, 615 F. Supp. 3d 1033, 1040 (D. Az. 2022) (noting Treasury position that it was "committed to working with recipients to take advantage of the many eligible uses and the great flexibility available under the SLFRF program."); *Horowitz v. Jasper County*, No. 9:23-cv-04700-RMG, 2024 WL 3861326 (D.S.C. Aug. 16, 2024) (because government officials could grant or deny [SLFRF funds] in their discretion, plaintiff had no protected property interest in the funds); *McDowell v. Jasper County*, No. 9:23-cv-04706-RMG, 2024 WL 3861386 (D.S.C. Aug. 16, 2024) (same).

Thus, contrary to APEDF's argument, the district court correctly ruled that APEDF's Count II failed as a matter of law because APEDF did not (and could not) allege a constitutionally protected property interest.[14]

---

[14]    APEDF goes on to later argue (in II.B) that it had in fact alleged more than a simple breach of contract because the alleged "breach" concerned "governmental conduct predicated on a discriminatory racial animus, unconstitutional 'associational' concerns, and an entirely obvious course of conduct grounds in 'Federal Question' considerations." OB:36-37. But APEDF offers no basis for the Court to consider what are plainly APEDF's Count I and Count III claims in the

Weiss Serota Helfman Cole & Bierman P.L.

**B.    APEDF did not establish a constitutionally inadequate process.**

The district court also correctly held that Count II failed to state a claim for the additional reason that APEDF had a constitutionally adequate process in state court, relying on the Court's decision in *McKinney v. Pate*, 20 F. 3d 1550, 1564 (11th Cir. 1994) ("[T]he presence of a satisfactory state remedy <u>mandates</u> that we find no procedural due process violation occurred.") (emphasis added). As the district court explained, to the extent that the County was contractually required to fund the first grant application for radio equipment, Florida courts "have the power to remedy Plaintiff's loss, considering both damages and equitable relief," so "the Florida procedures satisfy procedural due process and alleviate any alleged deprivation Plaintiff may have suffered due to Defendant's conduct." DE56-P.10.  In this regard the district court cited to *Kaminski v. Coulter*, 865 F. 3d 339, 348 (6th Cir. 2017) and *Indiana Land Co. v. City of Greenwood*, 378 F. 3d 705, 710 (7th Cir. 2004) for the principle that the availability of a state court remedy for breach of contract defeats federal procedural due process claims. *See also Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees,* 775 F. App'x 496, 498-99 (11th Cir. 2019) ("post-

---

context of deciding whether the Count II claim for deprivation of procedural due process stated a claim.  APEDF cites to no case law governing federal due process claims in which allegations of racial discrimination or violation of freedom of association are relevant.

Weiss Serota Helfman Cole & Bierman P.L.

deprivation state-law breach of contract action [was] constitutionally sufficient" to protect the procedural due process rights of a pensioner).

APEDF does not demonstrate error. OB:36-37(II.B). It fails even to acknowledge the *McKinny* holding on which the district court relied and, at most, as noted above, doubles down on a separate point, that it had purportedly alleged more than a simple breach of contract by reason of its other claims.[15]

Accordingly, the Court should affirm the district court's correct ruling against APEDF on its Count II claim for deprivation of a federal right to procedural due process. APEDF did not state a claim because it alleged no constitutionally protected property interest, nor did it demonstrate constitutionally inadequate process.

## III. The District Court Correctly Ruled That APEDF Failed To State A Claim For Violation Of The Equal Protection Clause.

In Count III of the amended complaint, APEDF claimed that the County violated APEDF's constitutional right to equal protection, discriminating against APEDF on the basis of race. DE35-P.23-29. The Equal Protection Clause requires the government "to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F. 3d 1206, 1212 (11th Cir. 2006). "To state a claim under the Equal Protection Clause, a plaintiff must allege that he is 'similarly situated' to individuals who received more favorable treatment; and ... his discriminatory treatment was

---

[15]    *Supra*, n. 14.

Weiss Serota Helfman Cole & Bierman P.L.

based on some constitutionally protected interest such as race." *Walker v. Fla*., No.

1:22: CV00233-RH-ZCB, 2023 WL 3306566, at *2 (N.D. Fla. Apr. 3, 2023) (citing

*Jones v. Ray*, 279 F. 3d 944, 946-47 (11th Cir. 2001), *report and recommendation*

*adopted*, No. 1:22:CV133-RH-ZCB, 2023 WL 3306546 (N.D. Fla. May 6, 2023).[16]

Because the amended complaint did not sufficiently allege these elements, the

Court should conclude that the district court correctly held that APEDF failed to state

a plausible claim in Count III.

### A.    The Count III allegations.

In Count III, APEDF alleged that it is a "Black-led and Black Community

directed Organization who has served the Black community of South St. Petersburg

for 28 years." DE35-P.23(¶78).[17] APEDF claimed that, in revoking the first grant

---

[16]    As the district court also observed: "Some courts have recognized that <u>when the law vests a decisionmaker with discretionary authority to award or withhold a state benefit, a plaintiff asserting an equal protection claim based on the denial of that benefit 'faces a steep uphill climb.'</u> *Pagan v. Calderon*, 448 F. 3d 16, 34 (1st Cir. 2006). Although a high hurdle, it makes good sense. 'Otherwise, a disappointed applicant for a state or local benefit could manufacture a constitutional claim by the simple expedient of alleging differential treatment. Were that the rule, the correctness of every state or local benefit denial would become a federal case.' *Id*." (Emphasis added).

[17]    The amended complaint alleged in addition only: "APEDF's Board, President, Black Power 96 radio's Station Manager and most of the nonprofit's staff and volunteers are Black. Those that are not are still committed to the APEDF as a 'Black-led, and Black-Community Directed organization.'" DE35-P.23(¶78).

award, the County discriminated against APEDF on the basis of race because seven of the thirty-four organizations whose grant awards were funded are allegedly not "Black-led and Black Community directed." DE35-P.25-27(¶¶85(a)-(d);87-8(a)-(c)).[18]

Count III incorporated allegations that APEDF was denied grant monies because the County mistakenly believed that ADPEF "is the same entity as the Uhuru Movement," members of which were raided by the FBI (DE35-P.15-16 (¶51(a)-(b)); that APEDF (a non-profit entity) had illegally run candidates for political office (DE35-P.16 (¶51(c)); and that ADEPF had ties to antisemitic groups (DE35-P.16-17(¶d)). Otherwise, APEDF alleged that at the Commission meeting at which the Commission voted to revoke the award of a grant on ADEPF's first application, a single Commission member who moved for the revocation stated: "I don't think we should be funding radio stations with the amount of needs that there

---

[18]    More particularly, APEDF alleged that four grant recipients whose grants were not revoked are not "Black-led and Black Community Directed organizations." DE35-P.25(¶85(a)-(d)). APEDF also alleged that PCF had recommended that three organizations be removed from the recommendation list because their projects would not directly counteract negative economic effects of COVID-19 (the race of which APEDF did not allege); and that, while APEDF's project would counteract negative economic effects, the projects of three additional organizations that are not "Black-led and Black Community Directed organizations" were not grant worthy. DE35-P.26-27(¶¶ 87-89 (a)-(c)).

Weiss Serota Helfman Cole & Bierman P.L.

are in the community," adding "I think prioritizing people over products and things

is a good way to start." DE35-P.24(¶82).

**B.  The Court should affirm the district court's ruling that APEDF did not state an equal protection claim.**

The Court should affirm the district court's ruling that APEDF failed "to state

an equal protection claim based on race because (1) the [amended] complaint lacks

factual allegations supporting race-based discrimination and (2) [APEDF] failed to

assert that similarly situated groups outside of the protected class received more

favorable treatment." DE56-P.10.

**1.  APEDF failed to sufficiently allege the racial identities of itself and other entities.**

First observing that "it is still not clear whether a corporate entity can have

'race' at all," the district court did not make that determination. DE56-P.11-12.[19]

---

[19]   The district court cited to *Village of Arlington Heights v. Metro. Housing Development Corp.,* 429 U.S. 252, 263 (1977) ("[A] corporation ... has no racial identify and cannot be the direct target of the [County's] alleged discrimination."); and to *Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.,* No. 21-13077, 2023 WL 750710, at *1 (11th Cir. June 1, 2023) ("[T]here's no binding law in this circuit clearly establishing that a corporation can have a race or that officials can discriminate against a corporation because of the corporation's race.")  DE56-P.12, n. 5.  In *Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.,* No. 1:17-CV-04400-WMR, 2023 WL 9107311, at * 4, n. 7 (N.D. Ga. Nov. 15, 2023), the district court noted the open question, citing *inter alia*, *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004) (concluding a corporation has standing under 42 U.S.C. §1981 when it has acquired an "imputed racial identity," where plaintiff alleged that it was a minority certified business by the SBA and that all of its shareholders were African American).

31

Weiss Serota Helfman Cole & Bierman P.L.

Instead, the district court correctly ruled that, assuming *arguendo* a corporate entity can have a "race," the amended complaint failed to sufficiently allege the racial identities of the non-profit organizations at issue.  *Id.*

In this regard, as the district court observed, "discerning the racial identity of a corporation [can] be quite daunting in many circumstances." DE56-P.11-12 (citing *Ultimax Transp., Inc. v. British Airways, Inc*., 231 F. Supp. 2d 1329, 1339 (N.D. Ga. 2002).[20]  In the context of statutory claims for discrimination brought by entities pursuant to 42 U.S.C. §1981, such as that in *Ultimax*, courts have imputed racial identity to corporations only where the corporation is certified as a minority-owned business, or its owner, majority of shareholders or officers are members of the specific class that is alleged to have been discriminated against. *E.g., Contemporary Personnel, Inc. v. Godiva Chocolatier*, No. 09-00187, 2009 WL 2431461, at *2 (E.D. Pa. 2009) (distinguishing collected cases on this basis, holding that allegations were insufficient to establish imputed racial identity to corporate plaintiff who alleged "a strong association with Hispanic or African American employees," where plaintiff

---

[20]    In *Ultimax*, the court held that the plaintiff was a member of a protected class because "a corporation owned by an African-American and staffed primarily by African-American employees has standing to assert a claim under Section 1981 based on racial discrimination directed to its owner and employees."  231 F. Supp. 2d at 1338.

Weiss Serota Helfman Cole & Bierman P.L.

did not allege the race of its owner, president or shareholders, much less the specific

racial makeup of its workforce).[21 & 22] And in *Prestige Restaurants & Entertainment,*

*Inc. v. Bayside Seafood Restaurant, Inc*., No. 09-23123-CIV,  2010 WL 680905 at

*7, n. 9 (S.D. Fla. Feb. 23, 2010), *aff'd*, No. 10-12072 (11th Cir. March 15, 2011),

---

[21]     *Contemporary Personnel,* 2009 WL 2431461, at *2 ("While courts have adopted the imputed racial identity concept from *Trinket,* those courts have only found corporations to have an imputed racial identity when *the owner, majority of shareholders and/or president are members of the specific class that is alleged to have been discriminated against. See Amber Pyramid, Inc. v. Buffington Harbor Riverboats, L.L.C.,* 129 Fed Appx. 292, 295 (7th Cir.2005) (holding that a 'minority-owned corporation, like Amber–Pyramid, assumes an 'imputed racial identity' from its shareholders.'); *Bains, LLC v. Arco Products, Ltd.,* 405 F.3d 764, 770 (9th Cir.2005) (finding a corporation had an imputed racial identity where the company was owned entirely by Sikh shareholders); *Verma v. Jefferson Hospital Ass'n,* 2006 U.S. Dist. LEXIS 81926 at *7 n. 12, 2006 WL 3210456 (E.D.Ark. Oct. 6, 2006) (finding that a corporation had standing under § 1981 when its owner and sole shareholder was a minority, which was the basis of discrimination); *Jamerson v. Milwaukee County, Procurement Div.,* 2006 U.S. Dist. LEXIS 42245, at *30, 2006 WL 1589655 (E.D. Wis. June 7, 2006) (stating that 'a minority owned company, such as [plaintiff corporation] assumes an 'imputed racial identity' from its shareholders')." (emphasis in original).

[22]     It bears noting that standing under §1981 is narrower than that of standing to assert a claim for violation of the equal protection clause.  *See, e.g., Inner City Contracting, LLC v. Charter Township of Northville, Mich*., 87 F. 4th 743, 753 (6th Cir. 2023) (distinguishing statement in *Arlington Heights,* 429 U.S. at 263, that "a corporation .. has no racial identity and cannot be the direct target of the petitioner's alleged discrimination," from standing under §1981 because "the Court in *Arlington Heights* did not address *statutory standing*; its opinion concerned an alleged violation of the Fourteenth Amendment ... [and] the Court found that another plaintiff had standing to assert the claims at issue, rendering the language unpersuasive dicta irrelevant to the Court's ultimate holding." (emphasis in original)).

Weiss Serota Helfman Cole & Bierman P.L.

the court dismissed with prejudice a complaint brought pursuant to 42 U.S.C. §1983 alleging unlawful discrimination against plaintiff on the basis of the race of its clientele.[23]

Here, the district court did not err in concluding that APEDF's amended complaint "still does not allege <u>sufficient facts</u> to discern the racial identities of Plaintiff itself or the 'similarly situated' entities that applied for and received grant money." DE 56-P.12 (emphasis added).[24] As the district court ruled:

> Plaintiff generally alleges that its board president is black, and that "most of the nonprofit's staff and volunteers" are black, in addition to the radio station manager. It further alleges that those who are not black are still-committed to Plaintiff as a "black-led and black-community directed organization. However, Plaintiff's allegations of the racial identities of only two specific people, and the use of "most" in reference to other employees, does not provide sufficient information for the Court to determine the racial identity of Plaintiff.

---

[23] The *Prestige* court also questioned whether a claim for violation of equal protection could be brought pursuant to §1983 (as opposed to §1981 or § 1982) in light of *Arlington Heights*, 429 U.S. at 263 ("[c]orporations ... ha[ve] no corporate identity and cannot be the direct target of ... alleged discrimination."). *Id.*

[24] In its order granting in part and denying in part the County's motion to dismiss the original complaint, the district court had directed APEDF concerning its attempt to plead an equal protection claim: "To sufficiently allege the racial identities of itself and similarly-situated entities, Plaintiff should provide sufficient factual information, such as the racial identities of those operating the entity, the racial identities of the employees of the entity, and the racial identities of those served by the entity.... This pleading requirement applies to Plaintiff itself and to any identified comparators." DE33-P.9, n. 4.

Weiss Serota Helfman Cole & Bierman P.L.

*Id.* (emphasis added).  That the Board President is alleged to be Black says nothing about the composition of the remainder of the Board.[25] And that the Radio Station Manager is Black says nothing about the composition of ADEPF itself (which, as alleged, is involved in numerous activities other than running the radio station for the last five years only, see DE35-P.1-2(¶1); P.4-5(¶10-12; 13)).

Furthermore, the district court correctly ruled that APEDF did not sufficiently allege the racial composition of the comparator organizations.  DE56-P.13.  Indeed, APEDF alleged still less in the way of facts: apart from the (repeated) conclusory allegation that these organizations are not "Black-led, and Black-Community directed," but are "predominately white," or serve a "predominately white" community, the amended complaint alleged no specifics whatsoever. *See* DE35-P.25-26(¶85(a)-(d); P.27(¶89(a)-(c)).

---

[25]      Reviewing the amended complaint and noting that APEDF had still failed to provide the specifics concerning its racial composition or those of the comparators it identified, the district court made note of APEDF's own website and the district court's records in the *Ionov* docket, noting that two of APEDF's board members appeared to be white, and that two indicted members of the African People's Socialist Party and the Uhuru Movement appeared to be white, stating: "The Court does not rely on this information when making its determination – it only highlights this issue to show the difficulty of ascertaining the racial identities of corporations, particularly since Plaintiff has failed to provide sufficient factual allegations in its amended complaint to support its racial discrimination claim." DE56-P.12-23, n. 6. *See Osherhoff*, 776 F. 3d at 811, and n. 4.

Weiss Serota Helfman Cole & Bierman P.L.

APEDF now merely repeats its conclusory and incomplete allegations with respect to its own racial composition and that of the comparators. OB:38-39; 41-44. And, otherwise, APEDF in effect suggests (contrary to the case law on which it relies) that specificity as to its racial make-up is not required because its very name and mission includes the word "African." OB:38.[26] Thus, APEDF does not demonstrate error in the district court's ruling.

### 2. Count III did not allege racial discrimination by the Commission.

But even if APEDF had alleged facts upon which racial identity could be imputed to APEDF and to the comparators, Count III nevertheless failed to state a claim for violation of the Equal Protection clause on the grounds of racial discrimination. In Count III, APEDF alleged the conclusion: the County had "discriminatorily" denied it ARPA funding, and that the County "acted under the color of state law to discriminate against [APEDF] on the basis of race." DE35-

---

[26] APEDF's contention that its allegations of racial identity sufficed for purposes of its Equal Protection claim is not in any way supported by the *Ultimax* case or the other cases that APEDF cites, at OB:39. In those cases, racial identity was imputed to the corporate plaintiff suing under §1981 by reason of specific and complete allegations concerning corporate ownership that identified the race of the owners. OB:41 (citing *John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 129 (N.D.N.Y. 2001)(corporation owned by two white males had standing under §1981 to complain that it was denied a contract owing to the promotion of an Hispanic male); *Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1495-97 (D. Colo. 1988) (corporation owned by Hispanic had standing under §1981).

Weiss Serota Helfman Cole & Bierman P.L.

P.28(¶¶92-93).  However, to prove its claim, APEDF would need to establish that the County's actions in denying APEDF grant monies were undertaken with a discriminatory intent or purpose on account of APEDF's "race."[27]  Yet APEDF's own allegations undermine this element of its claim.[28]

As identified above, APEDF itself alleged that the County's decisions to revoke the first grant award and to deny the second application stemmed from

---

[27]    *See, e.g. Burton v. City of Belle Glade*, 178 F. 3d 1175, 1188-89 (11th Cir. 1999) ("T]o establish a violation of ... the Equal Protection Clause..., appellant must show that the [government's] decision or act had a discriminatory purpose and effect.... Discriminatory purpose may be established by proof that the City used race as a substantial or motivating factor in its ... decisions and practices.... [O]nce a discriminatory purpose is established, the burden shifts to [the government] to prove that, at the time of the discriminatory act, the same decision would have been made for a legitimate reason.").

[28]    *See Rickett v. Jones,* 901 F. 2d 1058, 1060-61 (11th Cir. 1990) (error and mistake in judgment does not violate the equal protection clause because "[t]here must be intentional discrimination.") (citing *E & T Realty v. Strickland*, 830 F. 2d 1107, 1114 (11th Cir. 1987) ("The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims."); *see also, e.g*., *Lewis v. City of Berkeley,* No. C-08-5089 JCS, 2009 WL 33326, at * 9 (N.D. Cal. Jan. 6, 2009) (holding that plaintiff failed to state a claim for violation of equal protection based on city's decision to revoke a use permit, where the complaint did not allege that the city acted with intent to discriminate) (citing *Sanders v. City of Los Angeles,* 250 F. 3d 668, 687 (9th Cir. 2001)(affirming dismissal of claim for violation of equal protection, where plaintiff did not allege discriminatory animus); *Smithback v. Texas,* No. 3:07-CV-0288-M ECF, 2007 WL 1518971, at *13 (N.D. Tex. May 24, 2007) (dismissing claim that defendants violated plaintiff's right to equal protection, where plaintiff failed to plead operative facts alleging discriminatory intent).

Weiss Serota Helfman Cole & Bierman P.L.

considerations other than race. The County had discovered that members of the Uhuru Movement had been raided by the FBI; it believed that APEDF had illegally run candidates for political office and had ties to criminal activity. DE35-P.15-17(¶51); *see also* DE35-P.9-11(¶¶32-38). Otherwise, APEDF alleged the comment of a single Commission at the time that the County revoked the first grant: her statement that she did not think the County should be funding a radio station is manifestly race-neutral. DE35-P.24(¶82). Apart from the fact that a comment of a single Commissioner does not demonstrate the intent of the Commission as a whole, as alleged by APEDF itself, therefore, the County was not motivated by the "race" of APEDF, but by its perception that APEDF was either committing crimes or was closely affiliated with or supportive of those who were. As such, Count III failed to state a claim for violation of equal protection because APEDF's own allegations showed the absence of discriminatory intent. *E.g.*, *Rickett,* 901 F. 2d at 1060-61.

### 3.    The amended complaint failed to sufficiently allege similarities of the comparators.

In addition to the foregoing, Count III failed as a matter of law because the amended complaint did not sufficiently allege that the comparators which APEDF identified as receiving more favorable treatment (that is, they received grant funds and APEDF did not) were "similarly situated." To be similarly situated, "comparators must be *prima facie* identical in all relevant respects, or directly

Weiss Serota Helfman Cole & Bierman P.L.

comparable to plaintiff in all material respects." *Strickland v. Alderman,* 74 F. 3d 260, 264 (11th Cir. 1996); *see also Campbell v. Rainbow City, Ala*., 434 F. 3d 1306, 1315 (11th Cir. 2006).

Here, none of the comparators were "*prima facie* identical" to APEDF because the amended complaint does not allege that any of them were believed by the County to have committed crimes or engaged in hate speech, or have been closely affiliated or supportive of those that do. Further, as the district court found noteworthy, of the thirty-four entities whose applications were approved, only APEDF sought funding for radio station equipment. DE56-P.13.[29] Finally, because the amended complaint alleged that only a handful of the thirty-four organizations whose grant applications the County approved were "white," the amended complaint falls short of demonstrating that only "white" organizations received more favorable treatment than the "black" APEDF.

Accordingly, the Court should affirm the district court correct ruling against APEDF on Count III. APEDF did not state a claim for violation of the Equal

---

[29]    As the district court noted, where (as here) the decisionmaker is vested with "discretionary authority to award or withhold a state benefit, a plaintiff who grounds an equal protection claim on the denial of that benefit faces a steep uphill climb." DE56-P.11. Indeed, "[t]he government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Nat'l Endowment*, 524 U.S. at 587-88.

39

Weiss Serota Helfman Cole & Bierman P.L.

Protection Clause on the grounds of race because the amended complaint lacked factual allegations supporting race-based discrimination and failed to allege that similarly situated groups outside of the protected class received more favorable treatment.

## CONCLUSION

On the basis of the record, the foregoing authorities and argument, the Court should affirm the district court's dismissal of APEDF's amended complaint with prejudice.

Respectfully submitted,

**LAURA K. WENDELL**
Florida Bar No. 53007
**DANIEL L. ABBOTT**
Florida Bar No. 767115
**Anne R. Flanigan**
Florida Bar No. 113889
**WEISS SEROTA HELFMAN**
**COLE & BIERMAN, P.L.**
2800 Ponce de Leon Blvd., Ste. 1200
Coral Gables, Florida 33134
(305) 854-0800
dabbott@wsh-law.com
lwendell@wsh-law.com

By: _____/s/ *Laura K. Wendell*_____
Laura K. Wendell

*Counsel for Appellee, Pinellas County*

Weiss Serota Helfman Cole & Bierman P.L.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses Times New Roman 14-point typeface and contains 10,052 words.

_/s/ Laura K. Wendell_
Laura K. Wendell

## CERTIFICATE OF SERVICE

I, Laura K. Wendell, counsel for Appellee and a member of the Bar of this Court, certify that, on March 10, 2025, a copy of the foregoing was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties on the attached service list have been served.

## <u>SERVICE LIST</u>

Luke Lirot, Esq.
Luke Charles Lirot, P.A.
2240 Belleair Rd
Suite 190
Clearwater, Florida 33764
Luke2@lirotlaw.com
Team@lirotlaw.com

_Counsel for Appellant_

41
Weiss Serota Helfman Cole & Bierman P.L.